# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DERRICK DALE FONTROY,** | ) | |
| Plaintiff, | ) | Civil Action No. 14-165JOHNSTOWN |
| | ) | |
| v. | ) | District Judge Rothstein |
| | ) | |
| **JOHN WETZEL, et al,** | ) | Magistrate Judge Baxter |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I. RECOMMENDATION

It is hereby recommended that:

- Plaintiff's Motion for Emergency Hearing Requested Due to Retaliatory Confiscation of Plaintiff's Z-Code Single-Cell Status and Classification [ECF No. 65] be denied;

- Plaintiff's Complaint for Temporary Restraining Order and Preliminary Injunction against a Pervasive Risk of Harm [ECF No. 67] be dismissed as moot, and as facially unripe; and

- Plaintiff's Emergency Motion for Hearing and Motion for Temporary Restraining Order [ECF No. 70] be denied.

## II. REPORT

### A. Relevant Procedural History

Plaintiff, an inmate acting *pro se* and a frequent filer in this Court, filed this civil action on August 4, 2015. Plaintiff filed a purported class action complaint on behalf of all prisoners incarcerated in the Department of Corrections who have Hepatitis C and were allegedly deprived of proper medical treatment because under the Department of Corrections Hepatitis C protocol

1

inmates who have less than 12 months remaining in their sentences are not treated (the sentence tail). Plaintiff also alleged that he was being denied Hepatitis C treatment because he was receiving kidney dialysis.[1] Named as Defendants in the original complaint were: John Wetzel, Richard Ellis, Rex Betner, W. Salameh, Annette Kowalski, Christopher Oppman, Trevor Wingard, Tim Pleacher, D. Woodside, M. Borosky, Correctional Officer Nose, E. Custer, T. Lenhart, and a few John and Jane Does, as well as the Department of Corrections.

Shortly after the initial filing, Plaintiff attempted to amend or supplement his original pleading numerous times, and filed many motions. A telephonic hearing on many of Plaintiff's motions was held on August 19, 2014, and despite the fact that service of the original complaint had not been accomplished, the Office of the Attorney General entered a special appearance to be present at that hearing. Among the matters discussed at that hearing was the form of the initial complaint, which was in several parts and which appeared to be separate complaints filed together. Plaintiff was directed to file one Amended Complaint raising all claims pertaining to his medical issues before September 19, 2014.[2]

On August 26, 2014, Plaintiff filed the Amended Complaint, along with a Motion for Emergency Hearing seeking preliminary injunctive relief. ECF No. 13. By Memorandum Opinion and Order, the Court dismissed and denied Plaintiff's requests for immediate injunctive

---

[1] This complaint is a near copy of the complaint filed in Runkle v. Department of Corrections, C.A.No. 13-137Pitts, which was dismissed by Chief Magistrate Judge Maureen Kelly in December of 2013.

[2] At the hearing, Plaintiff acknowledged that he was serving a life sentence. It was explained to Plaintiff that he could not file a class action complaint on behalf of a class of inmates challenging the sentence tail limitation because he was not an appropriate representative of such a class since the sentence tail did not pertain to him. The motion for preliminary injunction was dismissed due to Plaintiff's lack of standing. ECF No. 17.

relief and directed Plaintiff to file a Second Amended Complaint raising only legal claims related directly to his **own** medical issues.[3] ECF No. 19.

On October 7, 2014, Plaintiff filed his Second Amended Complaint. ECF No. 23. As attachments thereto, Plaintiff included over one hundred pages of a separate complaint he entitled "Joinder of Claims" that advanced many new claims and named many new Defendants. ECF No. 23-1, 23-2. Despite its inadequacies, service of the Second Amended Complaint was ordered on October 24, 2014. ECF No. 26. Thereafter, the U.S. Marshal Service informed the Court that Plaintiff had not returned the completed forms necessary for it to accomplish service.

On January 28, 2015, Plaintiff attempted to file two additional proposed "supplemental" complaints. ECF Nos. 34, 34-1. These proposed supplemental complaints were not deemed filed as Plaintiff did not seek permission of the Court to file them pursuant to Rule 15(d) of the Federal Rules of Civil Procedure.

Thereafter, this Court issued an Order vacating the prior service order, construing only the Amended Complaint at ECF No. 23 as the operative complaint in this case, striking the Joinder of Claims documents [ECF Nos. 23-1 and 23-2] because they went beyond the Court's two prior directives that Plaintiff file a single amended complaint, and striking the proposed supplemental complaints [ECF Nos. 34 and 34-1]. See ECF No. 19.[4]

---

[3] In the Memorandum Opinion, this Court again explained that Plaintiff could not seek preliminary injunctive relief on behalf of a purported class of which he was not a member. Plaintiff was convicted of first degree murder and is serving a life sentence [see ECF No. 16, Notice to Court] and accordingly is not subject to the sentence tail and has no standing to challenge it.

[4] A separate service Order was issued directing the U.S. Marshal Service to serve the Second Amended Complaint [ECF No. 23 **without** attachments] on the originally named Defendants: Wetzel, Ellis, Betner, Salameh, Kowalewski, Oppman, Wingard, Pleacher, John and Jane Doe, John and Jane Moe, Department of Corrections, Woodside, Borosky, Nose, Custer and Lenhart. See ECF No. 26.

So then, the operative complaint in this matter is "Plaintiff's only Second Amended Complaint" docketed at ECF No. 23. In this filing, Plaintiff complains that the Hepatitis C protocol violates his Eighth Amendment rights because the protocol categorically excluded inmates with life sentences from receiving treatment for their disease. ECF No. 23, page 2-3, 10-11. Plaintiff claims he was diagnosed with Hepatitis C as early as 1997, yet Defendants did not follow-up to determine which genotype of the disease he had contracted and provided him no further treatment for the Hepatitis C.

The Commonwealth Defendants have filed a motion to dismiss, and (the only non-Commonwealth) Defendant Salameh's responsive pleading is due by May 19, 2015.

Presently pending before this Court are several motions by Plaintiff seeking preliminary injunctive relief. This Court conducted a telephonic hearing on these motions on April 27, 2015.

### B. Standards of Review

#### 1. *Pro se* pleadings

*Pro se* pleadings, however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading

rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

### 2. Preliminary injunction

Preliminary or temporary injunctive relief is "a drastic and extraordinary remedy that is not to be routinely granted." Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1566, 1568 (Fed.Cir.1993); see also Hoxworth v. Blinder, Robinson & Company. Inc., 903 F.2d 186, 189 (3d Cir. 1990). The four factors that must be shown for the issuance of a temporary restraining order are the same as those required to issue a preliminary injunction. Fink v. Supreme Court of Pennsylvania, 646 F.Supp. 569, 570 (M.D.Pa. 1986).

In determining whether to grant a preliminary injunction, a court must consider whether the party seeking the injunction has satisfied four factors: "1) a likelihood of success on the merits; 2) he or she will suffer irreparable harm if the injunction is denied; 3) granting relief will not result in even greater harm to the nonmoving party; and 4) the public interest favors such relief." Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, 109 (3d Cir. 2010) quoting Miller v. Mitchell, 598 F.3d 139, 145 (3d Cir. 2010). See also Fed.R.Civ.P. 65.

As a court sitting in equity, the district court must weigh the four factors, but it is not incumbent on the movant to prevail on all four factors, only on the overall need for an injunction. Neo Gen Screening, Inc. v. TeleChem Intern., Inc., 69 Fed.App'x 550, 554 (3d Cir. 2003). A sufficiently strong showing on either the likelihood of success or irreparable harm may justify an

injunction, even if a movant's showing on the other two factors is lacking.  Id.  Because a preliminary injunction is an extraordinary remedy, the party seeking it must show, at a minimum, a likelihood of success on the merits **and** that they likely face irreparable harm in the absence of the injunction.  See Adams v. Freedom Forge Corp., 204 F.3d 475, 484 (3d Cir. 2000); Hohe v. Casey, 686 F.2d 69, 72 (3d Cir. 1989).  The burden of introducing evidence to support a preliminary injunction is on the moving party with respect to the first two factors; however, the same is not true of the second two factors.  Neo Gen Screening, 69 Fed.App'x at 554.

These limitations on the power of courts to enter injunctions in a correctional context are further underscored by statue. Specifically, 18 U.S.C. § 3626 limits the authority of courts to enjoin the exercise of discretion by prison officials, and provides that:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C.A. § 3626(a)(1)(A).

The statute further instructs that:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity … in tailoring any preliminary relief.

18 U.S.C.A. § 3626(a)(2).

Moreover, where the requested preliminary injunction "is directed not merely at preserving the *status quo* but … at providing mandatory relief, the burden on the moving party is

particularly heavy." Punnett v. Carter, 621 F.2d 578, 582 (3d Cir. 1980). Mandatory injunctions should be issued only sparingly. United States v. Price, 688 F.2d 204, 212 (3d Cir. 1982). Thus, a request for any form of mandatory prospective relief in the prison context "must always be viewed with great caution because judicial restraint is specially called for in dealing with the complex and intractable problems of prison administration." Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995).

### C. Plaintiff's Motion for Emergency Hearing Requested Due to Retaliatory Confiscation of Plaintiff's Z-Code Single-Cell Status and Classification

In this motion, Plaintiff complains that prison staff reclassified his cell status from Z-code (or single cell) to double cell. Plaintiff claims this action was taken in retaliation for the filing of the current as well as other lawsuits. In the caption of Plaintiff's motion, he names Defendants John Wetzel, Correctional Officer Nose, Correctional Officer Beers, W. Salamhe, A. Kowalewski and John and Jane Doe, as well as non-Defendants J.P. Luther, D. Glass, W. Mailman, J. DiLenardo, and T. Grant[5]. As relief, Plaintiff seeks an Order directing all named

---

[5] To the extent that Plaintiff seeks to have this Court issue an injunction against non-parties to this action, this effort runs afoul of the law:

> "[G]eneral rule that a court may not enter an injunction against a person who has not been made a party to the case before it." Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc., 96 F.3d 1390, 1394 (Fed.Cir. 1996) citing Scott v. Donald, 165 U.S. 107, 117 (1897) ("The decree is also objectionable because it enjoins persons not parties to the suit."). Indeed, courts have refused to issue injunctions against non-parties. See U.S. Commodity Futures Trading Comm'n v. Amaranth Advisors, LLC, 523 F.Supp.2d 328, 334-35 (S.D.N.Y. 2007) (the court denied the defendant's motion for a preliminary injunction against the Federal Energy Regulatory Commission because it was not a party to the suit and it was not an "officer, agent, servant, employee, or attorney" of any party); Williams v. Platt, 2006 WL 149024, at *2 (W.D. Okla. Jan. 18, 2006) (unpublished) (the court denied the plaintiff's motion for an injunction noting that he had "not established a relationship between the preliminary injunction and the underlying civil rights claim, and he seeks to bind non-parties without any suggestion of active concert or participation by

7

individuals "to cease and/or their subordinates to decease [sic] their retaliatory conduct in erroneously re-classifying in the furtherance to deny him his previously afforded, authorized, and required classification of a Z-code status…" [ECF No. 65] and seeks "the return to his prior status of being classified as a Z-code status inmate" [ECF No. 66].

This request for injunctive relief is not related to the alleged constitutional violations of the underlying complaint in this civil rights action and so Plaintiff cannot demonstrate that there is any likelihood of success on the merits. See Little v. Jones, 607 F.3d 1245, 1251 (10th Cir. 2010) (for preliminary injunctive relief to be granted, there must be "a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."); Banks v. Good, 2011 WL 2437061 (W.D. Pa. Apr. 20, 2011); 2011 WL 2418699 (W.D. Pa. June 14, 2011).[6]

Plaintiff has not raised a retaliation claim in this lawsuit (despite several opportunities to amend his complaint). The facts upon which Plaintiff bases his request for injunctive relief only

---

the named defendants"). Moreover, once a court has issued an injunction against a party, that injunction may only be enforced against non-parties that are officers, agents, servants, employees, or attorneys of a party, or ones that are in active concert or participation with such non-parties or the party itself. See Fed.R.Civ.P. 65 (d)(2). To be bound by an injunction, a "non-party must have constructively had his day in court." Harris County, Tex. V. CarMax Auto Superstores Inc., 177 F.3d 306, 314 (5th Cir. 1999) ("the relevant inquiry is ... whether [the non-party] had such a key role in the corporation's participation in the injunction proceedings that it can be fairly said that he has had his day in court in relation to the validity of the injunction.") (citation omitted) (emphasis in original).

Banks v. Good, 2011 WL 2437061, at * 2 (W.D. Pa. Apr. 20, 2011); 2011 WL 2418699 (W.D. Pa. June 14, 2011).

[6] See also Spencer v. Stapler, 2006 WL 2052704, at *9 (D.Ariz. July 21, 2006) ("Plaintiff's motion [for injunctive relief] concerns events that are unrelated to the subject of his complaint and that concerns conduct of persons other than the defendants. Plaintiff's request will therefore be denied."); Westbank Yellow Pages v. BRI, Inc., 96 WL 255912, at *1 (E.D. La. May 13, 1996) ("A preliminary injunction is not an appropriate vehicle for trying to obtain relief that is not even sought in the underlying action.").

occurred after the filing of this civil action, and are entirely independent from the claims raised herein. Accordingly, these facts cannot support his request for injunctive relief. See Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) ("Devose's motion is based on new assertions of mistreatment that are entirely different from the claim raised and the relief requested in his inadequate medical treatment lawsuit. Although these new assertions might support additional claims against the same prison officials, they cannot provide the basis for a preliminary injunction in this lawsuit.").

Plaintiff's motion for injunctive relief [ECF No. 65] should be denied.

### D. Complaint for Temporary Restraining Order and or Preliminary Injunction against a Pervasive Risk of Harm

In his second motion for preliminary injunctive relief, Plaintiff complains that he was assaulted by a fellow inmate (Small) in December of 2014. ECF No. 67. Plaintiff believes that Inmate Small, due to his explosive temper and mental health issues, will assault him again in the future.

At the hearing on these motions, it was revealed that Inmate Small is currently housed in the RHU, effectively separated from Plaintiff. Plaintiff's motion for injunctive relief has become moot and should be dismissed. Additionally, Plaintiff's request for injunctive relief in this regard is speculative since it relies on a hypothetical future attack. Hence, the request is also facially unripe and should be dismissed. See Dawson v. Frias, 2010 WL 1379894, at *3 (D.N.J. March 30, 2010) ("speculation as to what might or might not happen in the future" cannot serve as a basis for a valid claim); Patterson v. Lilley, 2003 WL 21507345 (S.D.N.Y June 20, 2003) (defendants could only be held deliberately indifferent to an existing condition, not a speculative future injury).

### E. Plaintiff's motion for Emergency Hearing to Show Cause for an Order granting Motion for Temporary Restraining Order and or Preliminary Injunction

Finally, in this motion, Plaintiff requests that he be "examined by a qualified ENT specialist and obtain from that specialist an evaluation of the conditions of deafness and pressure on his ear drums, and a prescription for a course to stop retention of fluid in his ears, due to renal failure that will, with medical treatment restore and maintain the full function of his hearing …" ECF No. 70.[7]

This is not Plaintiff's first request for preliminary injunctive relief based upon medical treatment of his ears. During the August 19, 2014, hearing on several motions for injunctive-type relief, Plaintiff discussed multiple health issues including his Hepatitis C, his end-stage renal failure, as well as the retention of fluid in his ears caused by both. ECF No. 17.[8] At that time, Plaintiff sought injunctive relief in the form of a return visit to an ENT specialist so that he could get tubes in his ears. See ECF No. 17, page 17 et seq. Shortly thereafter, Plaintiff filed another motion seeking preliminary injunctive relief in the form of an order directing Defendants to "provide a specialized medically appropriate course of evaluation and treatment recommended by a [sic] Ear, Nose and Throat doctor, designed to restore and maintain the full function of Plaintiff's hearing" and to direct Defendants to "arrange for Plaintiff Fontroy to be examined by a qualified ENT specialist and to obtain from that specialist an evaluation of the conditions of

---

[7] Plaintiff has again listed both Defendants and non-Defendants in the caption of this motion. The non-Defendants listed are: Luther, Glass, Mailman, DiLenardo and Grant. As explained herein, the law does not support the issuance of a preliminary injunction against non-parties to the underlying action. See infra, n.5.

[8] Although not specifically raised in his complaint, this Court has liberally construed the ongoing ear issue as sufficiently related to the allegations of the underlying complaint.

10

deafness and pressure on his ear drums, and prescription for a course of medical treatment that will restore and maintain the full function of his hearing." See ECF No. 14.

Since that time, Plaintiff has been examined by a specialist who recommended the insertion of ear tubes. At the hearing on the present motion, Plaintiff explained that he seeks the second opinion of a specialist. Plaintiff continues to refuse the surgery. See ECF No. 76.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr'al. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104.

However, mere misdiagnosis or negligent treatment is not actionable under § 1983 as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Id. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.")."Neglect, carelessness or malpractice is more properly the subject of a tort action in the state courts." Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1081 (3d Cir. 1976). See also White, 897 F.2d at 108 ("mere medical malpractice cannot give rise to a violation of the Eighth Amendment."). "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that so long as a physician exercises

professional judgment, his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990).

Moreover, deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D. Pa. 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). There is necessarily a distinction between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment. United States ex rel. Walker v. Fayette County, 599 F.2d 533, 575 n.2 (3d Cir. 1979). "Mere disagreements over medical judgment" do not rise to the level of an Eighth Amendment violation. White v. Napoleon, 987 F.2d 103, 110 (3d Cir. 1990). Any attempt to second guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determination remains a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.3d 754, 762 (3d Cir. 1979) quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir. 1977).

The testimony at the August 19th hearing held on Plaintiff's prior motion for preliminary injunction reflected that Plaintiff has been continuously treated for his ongoing complaints related to his ears. ECF No. 17. The record reflects that in February 2015, Plaintiff was examined by an outside specialist and Plaintiff is now refusing the course of treatment recommended by the specialist. See ECF No. 76. Plaintiff disagrees with the specialist's recommendation because he believes it would be "prudent" to get a second opinion. Id. at page 4. Plaintiff believes the ear tubes are only a "Band-Aid" to his ongoing ear problems.[9] Such a disagreement does not rise to

---

[9] Defendants explained that the insertion of ear tubes is actually a diagnostic procedure because no doctor has been able to find anything that would explain Plaintiff's subjective symptoms. See ECF No. 76, page 7.

the level of a constitutional violation. Because he has not demonstrated a likelihood of success on the merits, Plaintiff's dissatisfaction with his current medical treatment does not warrant preliminary injunctive relief.

Moreover, granting this injunctive relief would effectively have the federal courts making ad hoc, and individual, decisions concerning the treatment of a single prisoner, and could harm both the Defendants and the public's interest. In the prison context, the Defendants' interest and the public's interest in penological order could be adversely affected if the court were to dictate the treatment of a single inmate, one inmate out of thousands in the state system. Therefore, consideration of "whether granting preliminary relief will result in even greater harm to the nonmoving party; and … whether granting the preliminary relief will be in the public interest," Gerardo v. Pellulo, 16 F.3d 1363, 1373 (3d Cir. 1994), also weigh heavily against Plaintiff in this case.

Accordingly, Plaintiff's request for preliminary injunctive relief should be denied.

## III. CONCLUSION

It is hereby recommended that:

- Plaintiff's Motion for Emergency Hearing Requested Due to Retaliatory Confiscation of Plaintiff's Z-Code Single-Cell Status and Classification [ECF No. 65] be denied;

- Plaintiff's Complaint for Temporary Restraining Order and Preliminary Injunction against a Pervasive Risk of Harm [ECF No. 67] be dismissed as moot, and as facially unripe; and

- Plaintiff's Emergency Motion for Hearing and Motion for Temporary Restraining Order [ECF No. 70] be denied.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. See Fed.R.Civ.P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. See Brightwell v. Lehman, 637 F.3d 187, 194 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge